## Case No. 8,482.

### LONG v. ROGERS et al.

[6 Biss. 416.] [1]

District Court, N. D. Illinois. July, 1875.

TRUST DEED — SALE AT OLD COURT HOUSE DOOR AFTER CHICAGO FIRE—BANKRUPTCY OF SUBSEQUENT MORTGAGEE.

1. Where a trustee's sale was made after the Chicago fire of October 9, 1871, at the north door of the (old) court house, the place specified in the trust deed, a subsequent purchaser is not bound to look beyond the recitals in the regular trustee's deed.

[Cited in Stewart v. Brown, 112 Mo. 181, 20 S. W. 453.]

2. Bankruptcy of subsequent mortgagee is no objection to the execution of the power of sale in the prior incumbrance.

This was a bill to set aside a sale on a trust deed given by William H. Rogers to William H. King, to secure a certain indebtedness in the trust deed described. The facts in the case were undisputed. The trust deed was given by Rogers to King to secure an indebtedness, and subsequently the party borrowed of the Equitable Insurance Company $4,000, for which he gave a second trust deed to one Montgomery, upon the same security, the Equitable Insurance Company being the beneficiary in the second trust

———

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 4 Cranch (8 U. S.) 60.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

.deed. By the fire of October 9, 1871, the Equitable Insurance Company was rendered insolvent, and on the 29th of September, 1871, a petition in bankruptcy was filed against it. At the time this petition was filed it held the $4,000 note. On the 29th of January, 1872, it was adjudicated bankrupt, and on the 27th of March, 1872, James Long was elected its assignee. Some time prior to this, default having been made in the payment of the interest on one of the notes, and the first trust deed becoming due, the trustee in the first incumbrance elected to foreclose, and advertised the property for sale under the provisions and powers contained in the trust deed. However, before the time for sale, according to the advertisement, (and the sale was to take place at the north door of the court house, in the city of Chicago) the fire came, and the court house was destroyed, so that nothing remained of it and of the north door of the same, except the ruins. The sale was afterwards made at the spot where that north door had stood, on the 2d of April, 1872, under a new advertisement, the courts having meanwhile moved to a new building on the corner of Adams and La Salle streets. Charles M. Smith became the purchaser of the property at this sale, for the amount of the trust deed and costs. The trustee then indorsed the notes as paid by the sale of the property in question, and .delivered them over to Rogers, the grantor in the trust deed. Soon after the sale, Mr. King, as trustee, executed and delivered to Smith a trustee's deed, conveying all the right and interest originally conveyed to him under the trust deed. Within a short time after this conveyance to him, Smith borrowed of Trinity College the sum of $8,000, securing the same by a trust deed on this property, and subsequently the equity of redemption was conveyed to the other defendant, McIntosh, subject to this incumbrance. The bill in this case seeks to set aside the entire title conveyed by the sale: First, for the reason that the sale was void, for fraud and collusion between the parties; secondly, because it was not made in accordance with the terms of the trust deed; and, thirdly, because the Equitable Insurance Company, which held a mortgage on Rogers' equity of redemption in the property so sold, was in bankruptcy at the time the sale took place, and therefore it is sought to be void as against them, and those claiming under them.

Hoyne, Horton & Hoyne, for Long.
Herbert & Quick, for Rogers.

BLODGETT, District Judge. It is not disputed that Long, the assignee, did hold all the rights which the Equitable Insurance Company held by virtue of the Montgomery trust deed, which was the second one given. In regard to the first point, namely, that of fraudulent combination between Rogers, the mortgagor, and Smith, the purchaser, and Fisher, the holder of the note, I do not think the evidence sufficient to sustain the allegation or entitle the party to relief on that ground.

In regard to the second point, namely, that the sale was irregular because it was made at the ruins of the door of the old courthouse, I am inclined to think that would be a good point if made at the time the sale took place. It would be good ground for stopping the sale before rights intervene, but I doubt if a purchaser would be absolutely obliged to take notice that the court-house was a ruin. Here is a trust deed with power to sell, and under its provisions a sale does take place, and a deed is given, in which it is recited that the sale was in due form and according to the terms of the deed. Under that, the person buying is clothed with a title, and thereupon he sells the property to another. Now, is it for a moment to be supposed that the other is obliged to look back to all the external facts connected with the sale, when his deed seems perfectly valid, and is in the regular form? I am inclined to think not, and I also think that the sale was made in pursuance of the terms of the trust deed.

I now come to the third point, namely, that the sale was void because the Equitable Insurance Company was in bankruptcy at the time. Now, the position of the company was simply that of mortgagee of Rogers' equity of redemption. That they held that, is clear, but it is clear also that he had the right to redeem from both the King and Montgomery incumbrance in which the insurance company was interested. Now, it has been held in several instances that when a bankrupt was the owner of the equity of redemption, and foreclosure proceedings were instituted after the bankruptcy, or an attempt was made to foreclose by a sale under a power in a trust deed, that the proceedings were void unless made with leave of the bankrupt court. Hutchings v. Muzzy Iron Works [Case No. 6,952]; In re Brinkman [Id. 1,884]. In this case, however, the company did not hold the equity of redemption vested in Rogers. The only interest the company held was as second mortgagee. King, by the power delegated to him under the first trust deed, was authorized to sell upon certain contingencies. These contingencies which so authorized him to sell had actually arisen and happened, and accordingly he proceeded to; and did, make the sale. The grantor to him was not in bankruptcy; he was capable of acting. Rogers was capable of paying off the debt,—at least nothing has been proved to the contrary; and, consequently, he was capable of acting. Now the ground upon which the courts have gone in the question above referred to is, that the grantor could not pay off the debt without leave of the court. and that therefore the proceedings were void, because of the invalidity

of the bankrupt to act. But here, in this case, King was not bound to take notice of the fact that the insurance company was the holder. I am inclined to think that, under the circumstances, he was not bound to suppose that he rested under any disability, and there was no privity of contract between him or Fisher and the bankrupt. They stood in no relation to the bankrupt, and had no right to take notice of the insurance company's position, and, inasmuch as there was no such privity between the parties, I do not think the sale was void. Besides, Trinity College and McIntosh had advanced large sums of money on the faith of their titles and the validity of the sale, and it seems to me that it would be going a great ways to set aside this sale to the detriment of innocent holders.

The bill will therefore be dismissed.

NOTE. The powers contained in a trust deed must be strictly construed, but under a power contained in a trust deed to sell at the north door of the court house in Chicago, it could be rightfully executed at the ruins of the north door of the court house, it having been destroyed in the interim by fire. Waller v. Arnold [71 Ill. 350]. See Gregory v. Clark [75 Ill. 485].